UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



PINPOINT IT SERVICES, L.L.C.,

    Plaintiff,

v.                       Civil Action No. 2:10cv516

ATLAS IT EXPORT CORP.,

    Defendant.

### OPINION AND ORDER

This matter is before the Court on a number of motions filed by both parties. Plaintiff Pinpoint IT Services, L.L.C. ("Pinpoint" or "Plaintiff") has filed a "Motion for Default Judgment and for Certification of Default Judgment as Final as to Counts I and III of the Complaint," a "Motion to Strike Defendant's Memorandum in Opposition to Motion to Certify Entry of Default," and a "Motion for Leave to File Supplemental Brief." Defendant, Atlas IT Export Corp. ("Atlas" or "Defendant"), has filed just one substantive motion, entitled "Motion to Set Aside Default and to Change Venue."[1] Defendant has also requested, on two separate occasions, oral argument regarding its Motion to Set Aside Default and to Change Venue.

---

[1] The Court notes that a "Motion for Sanctions" has also been filed in this case by a non-party, Robert L. Vaughn. The Court will address that motion in a separate Order.

After examining the Complaint, the motions, and the associated memoranda, the Court finds that the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The matter is therefore ripe for decision. For the reasons set forth below, the Court **DENIES** Defendant's Motion to Change Venue, **GRANTS** Plaintiff's Motion to Strike Defendant's Memorandum in Opposition to Motion to Certify Entry of Default, **GRANTS** Defendant's Motion to Set Aside Default, **DENIES** Plaintiff's Motion for Default Judgment and for Certification of Default as Final as to Counts I and III of the Complaint, and **DENIES** Plaintiff's Motion for Leave to File Supplemental Brief.

## I. FACTUAL & PROCEDURAL HISTORY

### A. Factual History

Plaintiff Pinpoint, a Virginia limited liability company with its principal place of business in Virginia Beach, Virginia, Compl. ¶ 1, filed this suit against Defendant Atlas, a corporation organized under the laws of Puerto Rico and with its principal place of business in Puerto Rico. Compl. ¶ 2. The suit seeks a declaration of non-liability, alleges breach of contract with damages exceeding $75,000.00, and seeks injunctive relief. Compl. ¶ 3, Prayer for Relief.

The events giving rise to this suit began on September 24, 2009, when Plaintiff entered into an agreement with Advanced

2

Health Media, L.L.C. ("AHM"), to provide IT services to AHM's facility in Chesapeake, Virginia. Compl. ¶ 7. In turn, on August 26, 2009, Plaintiff entered into an agreement with Defendant wherein Defendant would provide these IT services to AHM from Puerto Rico on behalf of Plaintiff so that Plaintiff could obtain favorable offshore labor costs. Compl. ¶¶ 8-9. Plaintiff alleges that Defendant was required under the contract to identify and hire forty-five consultants within 120 days of the execution of the agreement in order to allow Plaintiff to perform its contract with AHM. Compl. ¶ 10. However, according to Plaintiff, Defendant breached this provision of the contract. Compl. ¶ 15. Plaintiff also alleges that Defendant materially breached its contract by missing target deadlines and performing the contract poorly. Compl. ¶ 15. Defendant, on the other hand, asserts that the contract did not require it to identify and hire forty-five consultants by the target date but rather that the contract merely provided discount rates if the forty-five consultants were identified and hired by that date. Docket No. 21, at ¶ 3.

According to Plaintiff, the contract between Plaintiff and Defendant allowed for Plaintiff to terminate the contract without cause upon three months' notice and allowed Plaintiff to terminate the contract for cause at any time. Compl. ¶¶ 13-14. Given an alleged material breach on the part of Defendant, by

3

letter of April 1, 2010, Plaintiff terminated the contract with Defendant effective March 25, 2010. Compl. ¶ 20. Further, because of Defendant's alleged breach, prior to termination on March 25, 2010, Plaintiff amended its contract with AHM, which required the Plaintiff to hire consultants at a higher price in Virginia. Compl. ¶ 17. On July 9, 2010, over three months after Plaintiff terminated its contract with Defendant, Defendant sent a letter to Plaintiff challenging the termination of the contract and alleging damages resulting from the termination. Compl. ¶ 22. Defendant also forwarded this letter to AHM on July 25, 2010, which Plaintiff alleges tortiously interfered with its amended contract with AHM. Compl. ¶¶ 24, 26.

## B. Procedural History

On October 18, 2010, Plaintiff filed its three-count Complaint in this Court. Count I seeks a Declaration from the Court stating that Plaintiff was entitled to terminate its contract with Defendant, that Plaintiff did not breach said contract, and that Plaintiff is not indebted to Defendant for any reason. Compl. ¶ 42. Count II alleges that Defendant breached the contract between the two parties. Finally, Count III seeks an injunction preventing Defendant from tortiously interfering any further with Plaintiff's contractual relationships with AHM. Compl. ¶ 53.

4

The president of Atlas, Julio Pamias, personally received service of process papers on November 16, 2010. Docket No. 6; Docket No. 15, at 9. Defendant was required to file a responsive pleading by December 7, 2010 pursuant to Rule 12(a)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(a)(1). When Defendant did not file a responsive pleading, Plaintiff requested that the Clerk of Court enter default against Defendant on December 15, 2010. Docket No. 7. The Clerk entered default on December 16, 2010. Docket No. 8. However, on December 20, 2010, local counsel for Defendant submitted a motion for Jane Becker Whitaker to appear *pro hac vice* for Atlas, Docket No. 9, which was granted on December 21, 2010. Docket No. 11.

On December 23, 2010, Plaintiff filed a motion for default judgment and for certification of default judgment as final as to Counts I and III of the Complaint. Docket No. 13. In response, on December 25, 2010, Defendant filed a motion to set aside default and to change venue. Docket No. 15. Although Defendant had already filed a motion to set aside default, it did not file its Memorandum in Opposition to Plaintiff's Motion to Certify Entry of Default until January 18, 2011. Docket No. 17. On January 24, 2011, Plaintiff filed a motion to strike Defendant's Memorandum in Opposition to Motion to Certify Entry of Default along with a memorandum in support of that motion. Docket No. 18. On January 28, 2011 and March 22, 2011, Defendant

5

requested a hearing regarding its Motion to Set Aside Default and to Change Venue. Docket No. 20, 23. On May 11, 2011, Plaintiff filed a motion for leave to file a supplemental brief in further support of Plaintiff's response to Defendant's motion to set aside default and to change venue. Docket No. 24. The Court addresses these motions below.

## II.  DISCUSSION

Defendant's Motion to Change Venue is analyzed first in order to determine whether it is necessary for this Court to rule on any other motion.

The Plaintiff's Motion to Strike Defendant's Memorandum in Opposition to Motion to Certify Entry of Default is analyzed next because of the motion's potential effect on the analysis of Defendant's Motion to Set Aside Default. If the memorandum in opposition is stricken from the record, any meritorious defenses that Defendant may have raised in it may not be considered by the Court when deciding whether there is "good cause" to grant Defendant's Motion to Set Aside Default.

Defendant's Motion to Set Aside Default will be considered next since the Plaintiff's Motion for Default Judgment and for Certification of Default Judgment as Final as to Counts I and III of the Complaint will require no analysis from this Court if Defendant's Motion to Set Aside Default is granted. On the other hand, if Defendant's Motion to Set Aside Default is denied, the

Plaintiff's motion regarding default judgment will require analysis by the Court. Finally, the Court will also consider Plaintiff's Motion for Leave to File Supplemental Brief.

## A. Motion to Change Venue

### 1. Personal Jurisdiction

#### a. Standard of Review

Since the parties in this case are citizens of different states and the demand is for an amount greater than $75,000, subject matter jurisdiction is satisfied for this case on the basis of diversity of citizenship. U.S. Const. art. III, § 2; 28 U.S.C. § 1332. However, in its motion to set aside default and transfer venue, Defendant does contend that this Court lacks jurisdiction over its person. Although Defendant has raised the objection to personal jurisdiction in its motion to set aside the default and transfer venue, rather than a motion under Rule 12(b) of the Federal Rules of Civil Procedure, the Court will nonetheless address the merits of Defendant's contention.

When personal jurisdiction is challenged by the defendant, the plaintiff bears the burden of proving that the court possesses personal jurisdiction by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). The plaintiff must make a *prima facie* demonstration of personal jurisdiction when the court decides personal jurisdiction based

solely on "motion papers, supporting legal memoranda, and the allegations in the complaint." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009) (citing Combs, 886 F.2d at 676). In evaluating a plaintiff's *prima facie* showing, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676. In cases where "the defendant provides evidence which denies facts essential for jurisdiction, 'the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence.'" Colt Def., L.L.C. v. Heckler & Koch Def., Inc., No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690, at *29-30 (E.D. Va. Oct. 22, 2004) (quoting Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp., 737 F. Supp. 925, 926 (W.D. Va. 1990)). If this Court determines that Plaintiff has made a *prima facie* demonstration of personal jurisdiction at this stage in the case, the Court will proceed as if it has personal jurisdiction over this matter, although factual determinations to the contrary may be made at trial. See 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed. 2011).

Personal jurisdiction is determined by utilizing a two-part test. First, the long-arm statute of the applicable state must authorize the exercise of personal jurisdiction, and second, the application of the long-arm statute must be consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Geometric, 561 F.3d at 277. As to the long-arm portion of the analysis, Virginia's long-arm statute, section 8.01-328.1 of the Code of Virginia, provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from" a number of enumerated activities, including "[t]ransacting any business in this Commonwealth," "[c]ontracting to supply services or things in this Commonwealth," and "[c]ausing tortious injury by an act or omission in this Commonwealth." Va. Code § 8.01-328.1(A). The long-arm statute also specifies that an act is committed in the Commonwealth if the person "us[es] a computer or computer network located in the Commonwealth." Va. Code § 8.01-328.1(B). The long-arm statute further provides that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Va. Code § 8.01-328.1(C).

Virginia's long-arm statute has been determined "to extend personal jurisdiction to the extent permissible under the due

9

process clause, [so that] the statutory inquiry merges with the constitutional inquiry." Geometric, 561 F.3d at 277 (citing Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002)). Moreover, jurisprudence of the United States Court of Appeals for the Fourth Circuit has noted that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts," even if that act is a mere contractual relationship conducted entirely out-of-state via telephone and mail. English & Smith v. Metzger, 901 F.2d 36, 38–40 (4th Cir. 1990) (quoting Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 238 S.E.2d 800, 802 (Va. 1977)); Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 314 (4th Cir. 1982).

With respect to the due process prong, the due process requirement is satisfied if the defendant has "sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Geometric, 561 F.3d at 277 (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). In order to prove that the defendant had minimum contacts with the forum state, the plaintiff must prove that the defendant "'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out

10

of' those activities." Geometric, 561 F.3d at 277 (quoting Burger King Corp. v. Rudzewics, 471 U.S. 462, 472 (1985)). Furthermore, the defendant must "reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Fourth Circuit has utilized a three-part test for determining whether sufficient minimum contacts exist for the defendant to be subjected to personal jurisdiction in the forum state: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Geometric, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d. 707, 712 (4th Cir. 2002)).

### b. Analysis

Defendant argues that this Court lacks personal jurisdiction because of Defendant's lack of meaningful contact with the forum. In pressing its motion to transfer venue, Defendant instead alleges that Plaintiff is subject to personal jurisdiction in Puerto Rico for several reasons. First, Defendant argues that Plaintiff has other business relations in Puerto Rico including a majority interest in a Puerto Rico corporation, implying that venue in Puerto Rico would also be

11

proper. Second, Defendant argues that Plaintiff sought the services of Defendant in Puerto Rico and fully negotiated and executed the contract between Plaintiff and Defendant in Puerto Rico. Finally, Defendant implies that the claim does not arise out of Defendant's activities in Virginia since Defendant performed all services required under the contract in Puerto Rico.

Plaintiff argues that this Court can exercise personal jurisdiction over Defendant since the Defendant's conduct is within the reach of Virginia's long-arm statute, and due process is not violated. In regards to the reach of Virginia's long-arm statute, Plaintiff first argues that Defendant negotiated and executed the final contract in Virginia, which constituted "transacting any business" as provided in Virginia's long-arm statute. Va. Code § 8.01-328.1(A)(1). Second, Plaintiff argues that Defendant "contract[ed] to supply services or things in this Commonwealth" since the contract required Defendant to perform the contract by using computer servers located in Virginia. Va. Code § 8.01-328.1(A)(2). Plaintiff also argues that Defendant's accessing of AHM's computer servers in Chesapeake, Virginia, without downloading from the servers, in order to complete its contract with Plaintiff, constitutes performing an act within the forum since "[u]sing a computer or computer network located in the Commonwealth" constitutes an act

in Virginia. Va. Code § 8.01-328.1(B). Finally, Plaintiff argues that Virginia's long-arm statute reaches Defendant due to Defendant's tortious interference with Plaintiff's contract with AHM. Va. Code § 8.01-328.1(A)(3).

Plaintiff also argues that due process is not violated and the three-part test set forth in Geometric is satisfied. First, Plaintiff argues that "defendant purposefully availed himself of the privilege of conducting activities in the State" by reaching into Virginia to negotiate modifications to the contract and by forwarding the final draft of the contract to Plaintiff in Virginia so that Plaintiff could execute it. Plaintiff also contends that Defendant sent team leaders to Virginia for training in order to perform the contract with Plaintiff and that Defendant was required to access computer servers located in Virginia on a daily basis in order to fulfill its obligations under the contract. Second, Plaintiff asserts that its claims do "arise out of those activities directed at the State" since Plaintiff's claims revolve around Defendant's alleged breach of its contract with Plaintiff. Finally, Plaintiff argues that "the exercise of personal jurisdiction would be constitutionally reasonable" since Defendant should have reasonably anticipated being haled into court in Virginia because of its business activities and contacts in Virginia stemming from its contract with Plaintiff.

The Court finds that Plaintiff's arguments satisfy the *prima facie* showing needed to demonstrate this Court's personal jurisdiction over Defendant. Plaintiff has clearly asserted facts supporting personal jurisdiction under a preponderance of the evidence standard, and this Court must "construe all relevant pleading allegations in the light most favorable to the Plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676. For the above reasons, Defendant's allegation that this Court cannot exercise personal jurisdiction over Defendant is without merit. While Defendant's claims that Plaintiff is also subject to personal jurisdiction in Puerto Rico are not grounds upon which this Court could conclude that personal jurisdiction is improper in this forum, such allegations may factor into the determination of whether transfer of venue is warranted.

## 2. Transfer of Venue

### a. Standard of Review

In its Motion to Set Aside Default and to Change Venue, Defendant requests that this Court transfer venue to the United States District Court for the District of Puerto Rico. Section 1391 of Title 28 of the United States Code provides that venue is proper for a diversity of citizenship action in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" or in a "judicial district in

14

which any defendant is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a). Section 1404(a) and Section 1406(a) of Title 28 of the United States Code both serve as statutes which authorize the transfer of venue but in different circumstances. "Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege." Van Dusen v. Barrack, 376 U.S. 612, 634 (1964); See also Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., L.L.C., 305 F.3d 253, 255-56 (4th Cir. 2002) (noting that "[a]lthough its language suggests otherwise," transfers are proper under 1406(a) when personal jurisdiction is lacking but venue is technically proper). Since there is no indication that Plaintiff improperly laid venue in this Court, the Court will analyze Defendant's transfer request under Section 1404(a). This section allows a district court to transfer any civil action "to any other district or division where it might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. 1404(a).

In order to determine whether the transferee court is a district where the cause of action "might have been brought,"

15

the Court must determine whether plaintiff's claims could have been brought in the transferee court initially. <u>Agilent Techs., Inc. v. Micromuse, Inc.</u>, 316 F. Supp. 2d 322, 325 (E.D. Va. 2004). The phrase "might have been brought" has been interpreted to mean that "when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant." <u>Hoffman v. Blaski</u>, 363 U.S. 335, 344 (1960); <u>See also</u> <u>Agilent</u>, 316 F. Supp. 2d at 324 (noting that court must first determine whether claims could be brought in transferee court before considering whether to transfer venue). If the claims could have been brought in the transferee court initially, the subsequent decision to transfer venue is in the discretion of the court. <u>One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.</u>, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004) (citing <u>Verosol B.V. v. Hunter Douglas, Inc.</u>, 806 F. Supp. 582, 591 (E.D. Va. 1992)). In exercising this discretion, the Court will consider several factors to determine whether to transfer venue. These factors include "'(1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.'" <u>One Beacon Ins. Co.</u>, 312 F. Supp. 2d at

828 (quoting <u>BHP Int'l Inv., Inc. v. Online Exch., Inc.</u>, 105 F. Supp. 2d 493, 498 (E.D. Va. 2000)). Plaintiff's choice of forum is also given substantial weight in a court's decision to transfer venue, and "[i]t is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer . . . ." <u>Verizon Online Servs., Inc. v. Ralsky</u>, 203 F. Supp. 2d 601, 623-24 (E.D. Va. 2002).

## b. Analysis

First, the Court must consider whether the United States District Court for the District of Puerto Rico is a forum where the claim "might have been brought" when the action was commenced. Since the parties are citizens of different states and the demand is for an amount greater than $75,000, the United States District Court for the District of Puerto Rico clearly has subject matter jurisdiction on the basis of diversity of citizenship. Additionally, personal jurisdiction is also proper in Puerto Rico since "[g]eneral jurisdiction exists over resident defendants with their principal place of business in the jurisdiction," <u>LG Elecs. v. Advance Creative Computer Corp.</u>, 131 F. Supp. 2d 804, 813 (E.D. Va. 2001), and Defendant's principal place of business is in Puerto Rico. Compl. ¶ 2; Def.'s Mot. to Set Aside Default and to Change Venue ¶ 1. Therefore, the United States District Court for the District of

17

Puerto Rico appears to be a forum where the claim "might have been brought" for purposes of transferring venue under 28 U.S.C. 1404(a).

Second, the Court considers the fact that the United States District Court for the Eastern District of Virginia is Plaintiff's choice of forum. This choice will be given substantial weight and will not be disturbed unless the balance of the remaining factors weighs in favor of the Defendant.

In the first instance, the Court observes that Plaintiff's choice of forum is Plaintiff's principal place of business, and the location where a substantial amount of the events giving rise to this case occurred. The balance of the remaining factors does not counsel in favor of the Defendant's requested transfer. First, addressing Defendant's argument regarding proof, Plaintiff argues that the ease of access to sources of proof weighs in favor of retaining venue in Virginia. According to Plaintiff, the majority of the documentation can be transported to Virginia or exists in digital form and therefore its "location is entitled to little weight." 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3853 (3d ed. 2007) ("The location of records and documents relevant to the litigation is a factor that should be considered by the transferor court in determining the proper transferee forum on a motion under Section 1404(a) of Title 28 of the United States

Code and it has been in many cases, as is illustrated by the numerous citations in the note below. However, since most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight." (citations omitted)). Moreover, Plaintiff has introduced affidavits indicating that the bulk of the documentary evidence is in Virginia. Pl.'s Resp. to Def.'s Mot. to Set Aside Default and to Change Venue 18; Downing Second Aff. ¶ 23. While Defendant also argues, in addressing this factor, that the ease of access to sources of proof favors transfer of venue since the witnesses predominantly are located in Puerto Rico, this argument is applicable to the second and third factors involving convenience and cost of obtaining witnesses, not factor one. As a result, the Court finds that factor one counsels in favor of denying the transfer.

Second, Defendant argues that transfer of venue is necessary for the convenience of the parties and witnesses. Although Defendant lists at least nine witnesses that reside in Puerto Rico, Plaintiff also identifies approximately ten non-party witnesses that reside in Virginia, New Jersey, and North Carolina. Even if both parties are correct, and witnesses on both sides will experience inconvenience in either jurisdiction, a transfer of venue that merely switches the inconvenience from

one party to the other generally will be refused. 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3849 (3d ed. 2007). This logic also applies to the third factor, which considers the cost of obtaining the attendance of witnesses. As a result, factors two and three also do not counsel in favor of transfer.

Next, the availability of compulsory process favors retaining venue in Virginia as well. Plaintiff argues that seven of the ten witnesses identified by Defendant are either parties to the case or are employees of Plaintiff or its affiliate in Puerto Rico. Plaintiff also asserts that only two of Defendant's witnesses could not be compelled to testify in Virginia, but that their testimony would be immaterial to the case. Plaintiff further asserts that none of its non-party witnesses may be compelled to appear in Puerto Rico. Defendant makes no other argument based on availability of compulsory process other than the inconvenience and cost of their witnesses to travel to Virginia. Consequently, this factor also counsels in favor of this Court retaining venue.

The Court must also consider the parties' and localities' interests in having local controversies decided at home. Defendant argues that its interest in having the controversy decided in Puerto Rico weighs in its favor because there are issues of Puerto Rico law that should be determined by the

United States District Court for the District of Puerto Rico. However, according to the Complaint and Plaintiff's memoranda of law, Plaintiff's breach of contract claim and claim for injunctive relief arose from Defendant's contractual obligations to be performed in Virginia, utilizing computer servers maintained by AHM in Chesapeake, Virginia. Compl. ¶¶ 4-5; Pl.'s Resp. to Def.'s Mot. to Set Aside Default and to Change Venue 23. If such an allegation is true, Virginia law will apply to the breach of contract claim brought by Plaintiff since "Virginia adheres to the principle that the law of the place of performance governs questions arising in connection with the performance of a contract." Equitable Trust Co. v. Bratwursthaus Management Corp., 514 F.2d 565, 567 (4th Cir. 1975) (citing Arkla Lumber and Mfg. Co. v. West Virginia Timber Co., 132 S.E. 840, 842 (1926)). Therefore, if venue is transferred to Puerto Rico, the transferee court will apply the same law that the transferor court would have applied. Van Dusen, 376 U.S. at 632-37. Since this was arguably a contract to be performed in Virginia, albeit by workers employed in Puerto Rico, and Virginia law will likely apply, factors five and six support denial of the motion to transfer venue.

Finally, the interest of justice factor also weighs in favor of Plaintiff. "This factor 'encompasses public interest factors aimed at systemic integrity and fairness.'" Heinz

_Kettler GMBH & Co. v. Razor USA, L.L.C._, 750 F. Supp. 2d 660, 669 (E.D. Va. 2010) (quoting _Byerson v. Equifax Info. Servs., L.L.C._, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). In examining these two considerations, courts often look to judicial economy, avoiding inconsistent judgments, docket congestion, the burden on local citizens, avoiding unnecessary conflicts of law, as well as other factors already considered by the Court. _Id._ at 669-70. While the Court recognizes that there is a suit similar to this one currently pending in Puerto Rico, that action was filed by the Defendant _after_ this action was initiated. Pl.'s Mem. in Supp. of Mot. for Leave to File Brief in Further Support of Pl.'s Resp. to Def.'s Mot. to Set Aside Default and to Change Venue 3. As to the other considerations relevant to this factor, the Court is unable to say, at this juncture, in which district the action could proceed more efficiently or more seamlessly. However, in light of the Court's determinations with respect to the previous factors considered, the outcome of this seventh factor would have very little effect on the Court's ultimate determination of the transfer issue.

As a result, given the analysis above, the balance of factors clearly weighs in favor of venue remaining in Virginia. Therefore, the Court **DENIES** Defendant's motion to transfer venue.

## B. Motion to Strike Defendant's Memorandum in Opposition

### 1. Standard of Review

Before considering Defendant's Motion to Set Aside Default, Plaintiff's Motion to Strike Defendant's Memorandum in Opposition must be analyzed to determine whether arguments raised by Defendant in the opposition memorandum can be considered in determining "good cause" to set aside default. After Plaintiff filed its motion for default judgment on December 23, 2011, Defendant had until January 6, 2011 to file a response. Defendant did not file its memorandum in opposition to plaintiff's motion for default judgment until January 18, 2011. Docket No. 13; Docket No. 17.

Local Civil Rule 7(H) of this Court states, "[a]fter the filing of the complaint, all pleadings, motions, briefs, and filings of any kind must be timely filed with the Clerk's Office of the division in which the case is pending." E.D. Va. Local Civ. R. 7(H). Local Civil Rule 7(F)(1) provides that a party opposing a motion "shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service." E.D. Va. Local Civ. R. 7(F)(1). Rule 6(d) of the Federal Rules of Civil Procedure adds three days to this period if service is made under Rule 5(b)(2)(E), which allows for service to be made through electronic means. Fed. R. Civ. P. 6(d), 5(b)(2)(E). Given the rules above, Defendant's response to

23

Plaintiff's motion for default judgment was due no later than January 6, 2011, or fourteen days after Plaintiff filed the motion for default judgment on December 23, 2010.

Local Civil Rule 7(I) provides that "requests for an extension of time relating to motions must be in writing and, in general, will be looked upon with disfavor." E.D. Va. Loc. Civ. R. 7(I). Rule 6(b)(1) of the Federal Rules of Civil Procedure provides that the court may give extensions for filing for "good cause." Fed. R. Civ. P. 6(b)(1). Rule 6(b)(1)(B) states that an extension for good cause may be given "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Since the deadline for filing had already passed, Rule 6(b)(1)(B) governs. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 896-97 & n.5 (1990) (explaining that "any *post*deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect'" and "[a]*fter* the time for filing has expired . . . the court . . . may extend the time only 'upon motion.'"). No motion was made by Atlas requesting of the Court an extension of time for filing Defendant's Memorandum in Opposition to Plaintiff's Motion to Certify the Entry of Default. Therefore, excusable neglect analysis is not relevant since Defendant failed to make a motion

pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 6(b)(1)(B).

## 2. Analysis

Based on these rules, the Court finds that the deadline for Defendant to file its opposition memorandum was no later than January 6, 2011. Since Defendant filed its opposition memorandum outside of the deadline on January 18, 2011, without leave of the Court, the Court **GRANTS** Plaintiff's motion to strike it from the record. See, e.g., Key v. Robertson, 626 F. Supp. 2d 566, 577-78 (E.D. Va. 2009); Rossman v. Lazarus, No. 1:08cv316 (JCC), 2008 U.S. Dist. LEXIS 78925, at *5 (E.D. Va. Oct. 7, 2008).

## C. Motion to Set Aside Entry of Default

### 1. Standard of Review

The Court must next consider Defendant's motion to set aside entry of default. Rule 55(a) of the Federal Rules of Civil Procedure states, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Entry of default judgment resulting from such "default" may be entered by the clerk pursuant to Rule 55(b)(1) or by the court pursuant to Rule 55(b)(2). Rule 55(b)(1) states, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request,

with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Rule 55(b)(2) states, "[i]n all other cases, the party must apply to the court for a default judgment." The court may hold a hearing to conduct an accounting, determine damages, establish the truth of allegations, or investigate other matters to determine whether to enter default judgment. Fed. R. Civ. P. 55(b)(2).

Under Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "The disposition of motions made under Rule 55(c) . . . is a matter which lies largely within the discretion of the trial judge." Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967). In considering whether "good cause" exists to set aside default judgment under Rule 55(c), a court should consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006). The criteria must be "liberally construed in order to provide relief from the onerous

consequences of defaults and default judgments." <u>Lolatchy v. Arthur Murray, Inc.</u>, 816 F.2d 951, 954 (4th Cir. 1987). Although in an unpublished decision, a panel of the Fourth Circuit has also noted that "the extreme sanction of judgment by default is reserved for only cases where the party's noncompliance represents bad faith or a complete disregard for the mandates of procedure and the authority of the trial court." <u>Mobil Oil Co. de Venez. v. Parada Jimenez</u>, 989 F.2d 494, 1993 WL 616863, at *3 (4th Cir. 1993) (unpublished table decision). The Fourth Circuit has also "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." <u>Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.</u>, 616 F.3d 413, 417 (4th Cir. 2010).

## 2. Analysis

In order to determine whether "good cause" exists to set aside default judgment against Defendant, the Court will consider the "good cause" factors while liberally construing them in Defendant's favor. <u>Lolatchy</u>, 816 F.2d at 954.

### a. Meritorious Defense

The Court "has discretion to determine whether a proffered defense or counterclaim is meritorious." <u>Bank of Southside Va. v. Host & Cook, L.L.C.</u>, 239 F.R.D. 441, 445 (E.D. Va. 2007) (citing <u>Trueblood v. Grayson Shops of Tenn., Inc.</u>, 32 F.R.D.

190, 196 (E.D. Va. 1963)). In order for a defense to be meritorious, the proffer of evidence must only be one "which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988) (citations omitted). The burden for proffering a meritorious defense is not onerous, but the defenses must "allege[] specific facts beyond simple denials or conclusionary statements." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). The consideration of Defendant's meritorious defenses is vital to the analysis because the absence of meritorious defenses makes relief from default pointless. Indigo Am., Inc. v. Big Impressions, L.L.C., 597 F.3d 1, 4 (1st Cir. 2010) ("Where no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable."); See 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.70 (3d ed. 2011). Therefore, the Court will look at the claims made by Pinpoint and the defenses to those claims which Atlas has asserted.

In Count I, Plaintiff seeks a declaration that it was entitled to terminate the contract between it and Atlas because of Atlas' material breach, a declaration that Plaintiff did not breach, and a declaration that Plaintiff is not indebted to Atlas for any reason. Compl. ¶ 42. Although the Defendant has

not addressed defenses to Count I in the most orderly manner, Defendant's filings argue that Plaintiff in fact breached the contract first, not Defendant, by terminating the contract without cause with only one month notice, which according to Defendant, was contrary to the terms of the agreement. Def.'s Mot. to Set Aside Default and to Change Venue ¶ 8; Id. at Ex. 1. Whether Defendant's proffered defense to Count I is meritorious, namely that Plaintiff was the first to breach the contract by terminating it without cause with improper notice, depends on whether the Defendant has in fact proffered evidence that the Defendant did not breach prior to the Plaintiff terminating the contract. That issue is more properly addressed in the analysis of whether the Defendant has introduced a meritorious defense to Count II. Therefore, the Court will turn to Count II. If the Court determines that Defendant has alleged a meritorious defense to Count II, then the Defendant has necessarily also introduced a meritorious defense to Count I.

In Count II of Plaintiff's Complaint, Plaintiff alleges three independent ways in which Atlas breached the contract between the two parties. The Court will address whether Atlas has posited a meritorious defense to each of these claims in turn. According to the Complaint, Atlas materially breached by failing to hire the requisite number of qualified consultants, missing target deadlines, and performing the contract poorly.

Compl. ¶ 15. After examining Atlas' Motion to Set Aside Default and to Change Venue, Docket No. 15, the Court concludes that the text of the motion itself proffers no meritorious defenses to Pinpoint's claims. Atlas' response merely asserts reasons why it believes this venue is improper and why the case should be transferred to the District of Puerto Rico. Such assertions do not address the merits of Plaintiff's lawsuit.

The motion does state that Pinpoint's termination of the contract was erroneous because "no just cause existed." If this alone were the sole argument proffered by Atlas, the Court would be unable to conclude that a meritorious defense existed. However, Defendant's Motion to Set Aside Default and to Change Venue incorporates Exhibit 1 as evidence that "no just cause existed" for the termination. In Exhibit 1 to Atlas' motion, which is a letter from Atlas to Pinpoint declaring Atlas' intent to file suit, Atlas asserts several counterarguments to Plaintiff's claims.

As to Pinpoint's allegation that Atlas failed to adequately staff the project with forty-five consultants, the letter claims that Pinpoint unreasonably scrutinized the candidates that Atlas proposed for the project and constantly changed the staffing requirements. Although the Court considers this defense, it need not decide whether or not it is meritorious because it concludes that with respect to the first claim of breach, the Court need

not look further than the terms of the contract attached to the Complaint. It is not altogether clear that the terms of the contract require Atlas to hire forty-five consultants in order to perform the contract. It appears that the number of consultants hired merely influences the rates charged pursuant to the contract, rather than making forty-five consultants mandatory for contract execution. While argument of the parties and subsequently developed facts may affect the Court's interpretation of the contract, as an initial matter the contract does not appear to mandate forty-five consultants.

As to Pinpoint's second allegation that Atlas missed target deadlines, the letter indicates that the missed deadlines, if such conduct occurred, could also be attributed to Pinpoint's alleged changing of "staffing requirements and criteria" from "day to day" and Pinpoint's "consistent[] and excessive[]" scrutiny of potential consultants. Def.'s Mot. to Set Aside Default Ex. 1. While further facts would be needed before this Court could conclude whether such alleged behavior on the part of Pinpoint was permissible under the contract, at this point, the Court cannot conclude that Atlas' defenses to the allegation of missed target deadlines is without any merit.

Lastly, as to Pinpoint's third allegation of poor performance of the contract, given the vague nature of this allegation, the reasons provided by Atlas in response to

allegations one and two discussed above could easily apply to the allegation of poor performance as well. While the Court fully recognizes that the defenses provided by Atlas in this letter and in its memorandum are vague, the Court, when construing the defenses liberally and in Defendant's favor, Lolatchy, 816 F.2d at 954, cannot say that Atlas' defenses to Count II are completely unmeritorious. Consequently, Atlas' defense to Count I, asserting that it did not breach and Pinpoint breached first, is also plausibly meritorious.

In Count III, Plaintiff accuses Atlas of tortiously interfering with the Amended Contract between Plaintiff and AHM. Unlike Count II, the Court is unable to construe any aspect of Atlas' Motion to Set Aside Default and to Change Venue or memoranda as asserting a meritorious defense to this Count.

As a result of Atlas' allegations concerning Counts I and II and Atlas' lack of defense regarding Count III, the first factor does not clearly counsel in favor of or against setting aside default.

### b. Reasonable Promptness

The Court next considers whether Defendant was reasonably prompt in responding to the entry of default. Reasonable promptness is determined at the discretion of the trial judge and is evaluated "in light of the facts and circumstances of each occasion." United States v. Moradi, 673 F.2d 725, 727 (4th

Cir. 1982). "'A party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default and provide underlying facts in support of a claim of a meritorious defense.'" Wainwright's Vacations, L.L.C. v. Pan Am. Airways Corp., 130 F. Supp. 2d 712, 718 (D. Md. 2001) (citation omitted).

In the present case, Defendant was reasonably prompt in response to entry of default. Nothing was received by the Court from Defendant until a motion for admission *pro hac vice* was filed four days after the clerk entered default. Defendant did, however, respond with reasonable promptness to Plaintiff's motion for default judgment by filing a motion to set aside default and a motion to change venue within two days of Plaintiff's motion for default judgment and nine days after entry of default. In Wainwright's, a motion filed to set aside default one month after entry of default was considered to be reasonably prompt. Thus, the Court concludes that Defendant's nine day delay in responding to entry of default could also be considered reasonably prompt. Although Defendant did not respond to the entry of default until after Plaintiff filed a Motion for Default Judgment, Defendant responded before default judgment was entered by the Court. Because Defendant's promptness in response to Plaintiff's motion for default judgment should be

liberally construed in Defendant's favor, this factor counsels in favor of setting aside default.

### c. Personal Responsibility of Defaulting Party

The Court also must consider whether Defendant is ultimately responsible for its failure to answer Plaintiff's Complaint in a timely manner. Defendant contends that this failure is attributable to its failure to obtain local counsel. Courts have discretion to deny setting aside entry of default when the party's default was intentional or the result of negligence. 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.70 (3d ed. 2011). When the party's default was the result of negligence, the Court may consider whether the negligence was excusable in determining whether to set aside entry of default. Id.

In the present case, Defendant alleges that local counsel "agreed to take the case" but "failed to follow through." Docket No. 15, ¶ 10. However, Defendant then later admitted in a Response in Opposition to Plaintiff's Motion for Leave to File a Supplemental Brief (Docket No. 26) that local counsel never did "take the case" and submitted an exhibit that demonstrated that Defendant was aware of the proceedings against it weeks before they were served with Plaintiff's Complaint. Id. at Ex. 2. The exhibit contained an email between Defendant's Puerto Rico attorney and an attorney they attempted to contact to become

34

local counsel for Defendant. The email was dated November 19, 2010, and Defendant's attorney in Puerto Rico referenced that she had spoken with the Virginia attorney "a few weeks ago about this matter." Ex. 2, Docket No. 26. Defendant clearly was aware of Plaintiff's action against it, and Defendant failed to obtain local counsel in order to file a timely responsive pleading. As a result, this factor counsels in favor of denying Defendant's Motion to Set Aside Default.

### d. Prejudice to Non-Moving Party

"'To determine if the non-defaulting party was prejudiced, courts examine whether the delay [caused by the default]: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.'" Vick v. Wong, 263 F.R.D. 325, 330 (E.D. Va. 2009) (quoting Burton v. The TJX Cos., Inc., No. 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008)). The ability of a non-moving party to present evidence and the ability to proceed to trial are given the most weight in determining prejudice, and mere inconvenience is insufficient to constitute prejudice to the non-moving party. Id. Furthermore,

delay of only a few months generally does not constitute prejudice to the non-moving party. <u>Lolatchy</u>, 816 F.2d at 953.

Plaintiff has not demonstrated that it would be prejudiced by a decision to set aside default and to let the case proceed on the merits. Plaintiff also has not demonstrated that it would have difficulty in presenting evidence or difficulty proceeding to trial, the two most important factors in the prejudice analysis, if the Court were to grant Defendant's Motion to Set Aside Default. Therefore, this factor weighs in favor of setting aside default.

### e. History of Dilatory Action

Courts often look to whether there are other instances of dilatory action on the part of the defaulting party as a factor to determine whether setting aside entry of default is warranted. <u>See</u> <u>Colleton</u>, 616 F.3d at 418. However, if the dilatory action is solely the fault of the attorney and the defendant is blameless, the Court will favor setting aside default. <u>Lolatchy</u>, 816 F.2d at 953. Defendant has had more than one instance of dilatory action in this matter. Not only did Defendant fail to file a timely answer in response to Plaintiff's Complaint, which resulted in an entry of default, but also Defendant failed to file its "Memorandum in Opposition to Motion to Certify Entry of Default" in a timely manner. Defendant's tardiness in filing an opposition brief led to

36

Plaintiff's motion to strike Defendant's brief. Although Defendant has asserted many excuses for these delays, with varying degrees of legitimacy at best, the Court cannot conclude that Defendant was blameless in the dilatory action considering its knowledge of Pinpoint's lawsuit weeks before the Complaint was filed, as noted above. Therefore, this factor counsels in favor of denying Defendant's Motion to Set Aside Default.

### f. Alternative Sanctions

Alternative sanctions less drastic than entry of default could be imposed to cure the Defendant's failure to respond. Neither party has suggested alternative sanctions, but the Court will certainly consider any suggestions that are brought before it, such as a motion for reimbursement of Plaintiff's costs associated with Plaintiff's motion to strike and Plaintiff's response to Defendant's motion to set aside default. See Lolatchy, 816 F.2d at 953 ("The attorney, for example, could have been charged with all costs and expenses attendant to the delay, including attorneys' fees, or even held in contempt of court."). Therefore, this factor counsels in favor of setting aside default.

### g. Summary of Factors

The Court is required to construe all of the "good cause" factors liberally and to avoid the "extreme sanction" of default by allowing the party to proceed to defend on the merits. While

37

all of the factors certainly do not weigh in Defendant's favor, many of them do. For the reasons stated above, the Court will set aside default and allow Defendant to proceed to defend this action on the merits. Defendant's motion to set aside default is **GRANTED**. Because default is set aside, the Court **DENIES** Plaintiff's motion for default judgment, and this case will be allowed to proceed on the merits.

### D. Motion for Leave to File Supplemental Brief in Further Support of Plaintiff's Response to Defendant's Motion to Set Aside Default and Change Venue

On May 11, 2011, Plaintiff filed a Motion for Leave to File a Supplemental Brief in Further Support of Plaintiff's Response to Defendant's Motion to Set Aside Default and to Change Venue. Docket No. 24. Plaintiff indicated in a supporting brief that new information has come to light indicating that representations made to the Court by Defendant regarding attempts to obtain local counsel are inaccurate. Docket No. 25. Plaintiff desires to file a supplemental brief to argue additional reasons why Defendant's motion to set aside should be denied because Plaintiff alleges that the new information undermines any claim of good cause and undermines the credibility of representations made by Defendant. Docket No. 25. The new information regarding Defendant's failure to obtain local counsel only aids in the analysis of one of the factors used to determine whether to set aside default. The new

information does not change the decision of the Court concerning Defendant's motion to set aside default. Therefore, the Court **DENIES** Plaintiff's motion for leave to file a supplemental brief.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Change Venue, **GRANTS** Plaintiff's Motion to Strike Defendant's Memorandum in Opposition to Motion to Certify Entry of Default, **GRANTS** Defendant's Motion to Set Aside Default, **DENIES** Plaintiff's Motion for Default Judgment and for Certification of Default as Final as to Counts I and III of the Complaint, and **DENIES** Plaintiff's Motion for Leave to File a Supplemental Brief.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 13 , 2011